IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-0381

════════════

 

F.F.P. Operating Partners,
L.P., D/B/A Mr. Cut Rate #602, Petitioner,

 

v.

 

Xavier Duenez and Wife Irene
Duenez, as Next Friends of Carlos Duenez and Pablo Duenez, Minors, Respondents

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Thirteenth District
of Texas

════════════════════════════════════════════════════

 

 

Argued on November
30, 2005

 

 

Justice Wainwright delivered the
opinion of the Court, in which Justice
Hecht, Justice Brister, Justice Medina, Justice Green, Justice Johnson, and
Justice Willett joined.

 

Chief Justice Jefferson filed a
dissenting opinion.

 

Justice O’Neill filed a dissenting
opinion.

 

 

We
are asked to revisit our holding in Smith v. Sewell that the
proportionate responsibility scheme of chapter 33 of the Texas Civil Practice
and Remedies Code requires an apportionment of responsibility under chapter 2
of the Alcoholic Beverage Code. 858 S.W.2d 350 (Tex. 1993). We decline the
invitation to reverse Sewell and instead affirm its holding that the
language of the proportionate responsibility statute includes claims under the
Dram Shop Act. Neither the purpose nor the language of the Act makes a dram
shop automatically responsible for all of the damages caused by an intoxicated
patron, regardless of a jury’s determination of the dram shop’s proportion of
responsibility. Instead, pursuant to Chapter 33, a dram shop is responsible for
its proportionate share of the damages as determined by a jury. Accordingly, we
reverse the court of appeals’ judgment and remand the case for a new trial.

 I.
Factual and Procedural Background 

After
spending the day cutting firewood while consuming a case and a half of beer,
Roberto Ruiz drove his truck to a Mr. Cut Rate convenience store owned by
F.F.P. Operating Partners, L.P. and purchased a twelve-pack of beer. The
store’s assistant manager, Carol Solis, sold the beer to Ruiz. Ruiz then
climbed into his truck, opened a can of beer, and put the open beer can between
his legs. There was conflicting testimony about whether Ruiz actually drank any
of the beer that he purchased at Mr. Cut Rate.

Ruiz
then drove onto a nearby highway and swerved into oncoming traffic several
times. Two cars dodged his truck to avoid a collision. As he crossed a bridge
approximately a mile and a half from the Mr. Cut Rate convenience store, Ruiz
swerved across the center line, hitting the Duenezes’ car head-on. All five
members of the Duenez family suffered injuries. 

Ruiz
was arrested at the accident scene for drunk driving. He pled guilty to
intoxication assault and was sentenced to prison. The Duenezes brought a civil
suit against F.F.P., Ruiz, Solis, Nu-Way Beverage Company, and the owner of the
land where Ruiz had spent the afternoon cutting firewood and drinking. F.F.P.
filed a cross-action against Ruiz, naming him as a responsible third-party and
a contribution defendant. The Duenezes thereafter nonsuited all defendants
except F.F.P.

At
the pretrial conference, the Duenezes obtained a partial summary judgment that
chapter 33 of the Texas Civil Practice and Remedies Code, the proportionate
responsibility statute, did not apply to this case. The trial court then
severed F.F.P.’s cross-action against Ruiz, leaving F.F.P. as the only defendant
for trial. F.F.P.’s severed action against Ruiz remains pending in the trial
court. 

The
Duenezes’ claim against F.F.P. proceeded to trial. At the charge conference,
the trial court refused to submit questions for determination of Ruiz’s
negligence. The court also failed to submit questions on the proportionate
responsibility of Ruiz and F.F.P. 

The
jury found that when the alcohol was sold to Ruiz, it was “apparent to the
seller that he was obviously intoxicated to the extent that he presented a
clear danger to himself and others,” and that Ruiz’s intoxication was a
proximate cause of the collision. The jury returned a $35 million verdict
against F.F.P., upon which the trial court rendered judgment. 

The
court of appeals affirmed the trial court’s judgment, holding:

[I]n third-party
actions under the Dram Shop Act in which there are no allegations of negligence
on the part of the plaintiffs, a provider is vicariously liable for the damages
caused by an intoxicated person, and such a provider is not entitled to offset
its liability by that of the intoxicated person.

 

69 S.W.3d 800,
805. In reaching that conclusion, the court distinguished our decision in Sewell,
in which we held that the comparative responsibility statute applied to
dram-shop causes of action. Id. The court of appeals concluded that Sewell’s
holding was limited to first-party actions in which the intoxicated patron is
suing for his own injuries and is inapplicable when the plaintiff is an
innocent third party injured by an intoxicated patron. Id. at 805-06.
The court also held that the trial court did not abuse its discretion in
severing F.F.P.’s contribution claim against Ruiz, concluding that because
F.F.P.’s statutory liability was vicarious and not direct, F.F.P. had an
indemnity claim rather than a contribution claim against Ruiz. Id. at
807-08. We granted F.F.P.’s petition for review and issued an opinion on
September 3, 2004. F.F.P. filed a motion for rehearing. While the motion was
pending, Xavier, Irene, and Ashley Duenez settled their claims against F.F.P.
Only the claims of Pablo and Carlos Duenez against F.F.P. remained before the
Court. On April 8, 2005, we granted the F.F.P.’s motion for rehearing. The case
was re-argued on November 30, 2005. Today we withdraw the Court’s previous opinion
and substitute this one in its place.

II.
Statutory Interpretation

           
Statutory construction is a legal question that we review de novo, ascertaining
and giving effect to the Legislature’s intent as expressed by the plain and
common meaning of the statute’s words. Tex. Dep’t of Transp. v. City of
Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004).

A.
The Dram Shop Act

The
Legislature enacted the Dram Shop Act to “deter providers of alcoholic
beverages from serving alcoholic beverages to obviously intoxicated individuals
who may potentially inflict serious injury on themselves and on innocent
members of the general public.” Sewell, 858 S.W.2d at 356. Section 2.02
of the Alcoholic Beverage Code sets forth the scope and elements of this
action:

 (a) This
chapter does not affect the right of any person to bring a common law cause of
action against any individual whose consumption of an alcoholic beverage
allegedly resulted in causing the person bringing the suit to suffer personal
injury or property damage.

 

 (b) Providing,
selling, or serving an alcoholic beverage may be made the basis of a statutory
cause of action under this chapter and may be made the basis of a revocation
proceeding under section 6.01(b) of this code upon proof that:

 

 (1) at the
time the provision occurred it was apparent to the provider that the individual
being sold, served, or provided with an alcoholic beverage was obviously
intoxicated to the extent that he presented a clear danger to
himself and others; and

 

 (2) the intoxication
of the recipient of the alcoholic beverage was a proximate cause of the damages
suffered.

 

Tex. Alco. Bev. Code § 2.02 (emphasis
added).[1] If a plaintiff meets the “onerous
burden of proof” imposed by the Dram Shop Act, then the provider is liable for
damages proximately caused by its employees or patrons. El Chico Corp. v.
Poole, 732 S.W.2d 306, 314 (Tex. 1987); see also Tex. Alco. Bev. Code § 2.03.[2]
In the Dram Shop Act, the Legislature created a duty, not recognized at common
law, on alcohol providers and increased the potential liability of providers as
a means of deterring providers from serving obviously intoxicated individuals.
Historically, the “rule of non-liability” held that an alcohol provider owed no
duty to third persons for injuries caused by the provision of alcohol. Sewell,
858 S.W.2d at 352; Poole, 732 S.W.2d at 310; see also Joel Smith,
Annotation, Common-Law Right of Action for Damages Sustained by Plaintiff in
Consequence of Sale of Gift of Intoxicating Liquor or Habit-Forming Drug to
Another, 97 A.L.R.3d 528 (1980). Additionally, providers were generally
able to avoid liability because the consumption of alcohol, rather than its
provision, was considered the sole proximate cause of injury to the patron and
third persons. Poole, 732 S.W.2d at 309. Finally, even if the sale was a
proximate cause of intoxication, injury was considered to be an unforeseeable
result of the patron’s intoxication. Id. The common law effectively
precluded dram shops from incurring liability when their intoxicated patrons
caused injury to third parties. Id.; see also Mata v. Schoch, 337
B.R. 135, 136 (Bankr. S.D. Tex. 2005). 

Relying
on “modern analysis,” in 1987 the Court in Poole discarded the “absolute
rule of no liability” and imposed a duty on a dram shop not to serve alcoholic
beverages to a person it knows or should know is intoxicated. Poole, 732
S.W.2d at 310. For the first time, the Court held that a provider of alcohol is
negligent as a matter of law when he knowingly sells an alcoholic beverage to
an intoxicated person, and the Court relaxed the standards for proving
proximate cause and foreseeability. Id. at 313-14. The claimant was
still required to prove that the dram shop’s conduct was the proximate cause of
his or her injury to recover. Id. at 313.

The
Legislature acted to address the problem of providers’ excessive provision of
alcohol to patrons. A week after this Court issued Poole, the Dram Shop
Act became effective and narrowed potential liability from Poole in
several ways. See id.; Parker v. 20801, Inc., 194 S.W.3d 556, 560
n.4 (Tex. App.—Houston [14th Dist.] 2006, pet. filed). First, it made the Act
the exclusive means of pursuing a dram shop for damages for intoxication. Tex. Alco. Bev. Code § 2.03.[3]
Second, as an element of liability, the patron must be “obviously
intoxicated,” not just intoxicated, when the dram shop serves him alcohol. Id.
§ 2.02 (emphasis added).[4] Nowhere in the legislation was the
common law requirement that the claimant prove that the dram shop proximately
caused the injuries eliminated. As under the common law, a dram shop claimant
“must establish that the liquor licensee’s negligent conduct proximately caused
his injuries.” Poole, 732 S.W.2d at 313; accord Sewell, 858
S.W.2d at 355 (citing Tex. Alco. Bev.
Code § 2.02) (“Under Chapter 2, the intoxication of the recipient must
be a proximate cause of the damages.”).

The
common foundation of both Chief Justice
Jefferson’s and Justice O’Neill’s
dissents is the contention that the Legislature abolished the element of
proximate cause for a third party to recover from a dram shop and replaced it
with “a form of vicarious liability,” as Chief
Justice Jefferson labels it, or “imputed liability,” as Justice O’Neill terms it. The
dissenters contend that once the dram shop provides alcohol to an obviously
intoxicated patron, it becomes responsible for all subsequent injuries caused
by the patron’s intoxication. This assumption forms the basis of their
conclusions that submitting a proportionate liability question to the jury does
not change the dram shop’s joint and several liability for all of the damages.
For example, even if the patron consumed none of the alcohol purchased from the
dram shop, the dissenters would hold the provider liable for all the injuries
caused by the patron to third parties. The statutes do not support their
approaches, which would nullify the effect of the expansive language in the
proportionate responsibility statute.

The
dissenters contend that the failure to read vicarious or imputed liability into
the Act undermines the legislative purpose. On the contrary, the Act
accomplishes the objective of deterring the sale of alcohol to obviously
intoxicated persons in several ways. The Act provides a previously foreclosed
remedy against sellers of alcohol. And unlike the prior common law, dram shops
now owe a duty to patrons and injured third parties under specified
circumstances and can be subject to civil liability for the damages they
proximately cause. Compare Poole, 732 S.W.2d at 309 with Sewell,
858 S.W.2d at 355. The Legislature also deterred irresponsible conduct by
providing that a dram shop’s alcohol license is subject to revocation for
violating the Act. Tex. Alco. Bev. Code
§ 2.02(b).[5]

Justice O’Neill finds the imposition of
imputed liability on providers in a single phrase in Section 2.03 of the Act,
set out in italics: “The liability of providers under this chapter for the
actions of their customers, members, or guests who are or become intoxicated is
in lieu of common law or other statutory law warranties and duties of providers
of alcoholic beverages.” __ S.W.3d __; Tex.
Alco. Bev. Code § 2.03.[6] Although Justice O’Neill states that Chapter 33 applies, she
nevertheless concludes that “the dram shop is liable to injured third parties
for both its own actions and for its patron’s share of responsibility.” __
S.W.3d __. She borrows support for this position from section 7 of the
Restatement of Torts: a party to whom liability is imputed and who is also
independently liable “is responsible for the share of the verdict assigned to
[the party whose liability is imputed] and is also responsible for the share of
the verdict assigned to its own negligence.” Id. at __; see also Restatement (Third) of Torts: Apportionment of
Liability § 7 cmt. j (2000) (stating
that “[t]he employer is responsible for the share of the verdict assigned to
the employee and is also responsible for the share of the verdict assigned to
its own negligence”). The common law has been supplanted by statute and Section
7 is not the law on this issue in Texas. The Proportionate Responsibility Act
and the Dram Shop Act govern this issue.

Justice O’Neill insists that the
Legislature intended the phrase “the liability of providers under this chapter
for the actions of their customers,” to mean that providers under this chapter are
liable for the actions of their customers. __ S.W.3d __; Tex. Alco. Bev. Code § 2.03.[7]
The statute can mean this only if words not in the text are inserted. Read as
written, in context, Section 2.03 simply means that the Dram Shop Act provides
the exclusive remedy against an alcohol provider for damages caused by an
intoxicated patron at least 18 years of age—i.e., common law remedies are no
longer available. We do not read Section 2.03 to say that a provider of alcohol
is responsible, without regard to fault, for one hundred percent of the damages
caused by an intoxicated patron.

           
Chief Justice Jefferson seeks to
support his position with an analogy to reasoning in vicarious liability theory
for negligent entrustment cases. __ S.W.3d __. Generally in Texas, the doctrine
of vicarious liability, or respondeat superior, makes a principal liable for
the conduct of his employee or agent. See Baptist Mem. Hosp. Sys. v. Sampson,
969 S.W.2d 945, 947 (Tex. 1998). This liability is based on the principal’s
control or right to control the agent’s actions undertaken to further the
principal’s objectives. See Wingfoot v. Alvarado, 111 S.W.3d 134, 136
(Tex. 2003); Prosser & Keeton on the
Law of Torts, §§ 69-70 (W. Page Keeton et al. eds., 5th ed. 1984).
Should an innocent third party suffer injury at the hands of the agent or
employee, the theory is that the enterprise itself, not only the agent, should
be held accountable. See Wingfoot, 111 S.W.3d at 146; Keeton et al., § 69; see also Restatement (Third) of Torts: Apportionment of
Liability § 13 (2000). Here, the patron is not the agent or employee of
the dram shop, the provider has no control or right to control the patron, and
the patron’s actions causing the accident are not in furtherance of the
provider’s business. The analogy to negligent entrustment, a form of vicarious
liability, suffers from similar deficiencies. As the late Dean Prosser
explained, the basis for imposing liability on the owner of the thing entrusted
to another is that ownership of the thing gives the right of control over its
use. Keeton et al., § 73; see
Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987)
(proving negligence by a theory of negligent entrustment requires establishment
of ownership). Hence, an owner may have to answer in damages for negligently
exercising her control by entrusting an item to a person who the owner knew or
should have known would act in a reckless or incompetent manner. Schneider,
744 S.W.2d at 596. Because there is no ownership by the dram shop of the object
used by a patron to cause the accident, the vicarious liability doctrine does
not support—and the Dram Shop Act does not create—the indemnification scheme
proposed by Justice O’Neill or
the vicarious liability scheme that Chief
Justice Jefferson would create. Their positions expand the theory of
vicarious liability beyond its traditional boundaries.

B.
Chapter 33

Chapter
33 of the Texas Civil Practice and Remedies Code governs the apportionment of
responsibility in cases within its scope. The 1995 version of the proportionate
responsibility scheme applies to this case because the collision that injured
the Duenezes occurred in July 1997. At that time, section 33.013 of the Civil
Practice and Remedies Code provided, with certain exceptions, that a defendant
was liable only for the percentage of responsibility found by the trier of
fact, unless the percentage of responsibility exceeded fifty percent. Tex. Civ. Prac. & Rem. Code §
33.013.[8] If a defendant’s percentage of
responsibility exceeded fifty percent, that defendant was jointly and severally
liable for all of the claimant’s recoverable damages. Id.

Section
33.003 provided that the factfinder was to compare a defendant’s responsibility
with the responsibility of the claimant, other defendants, and any responsible
third party joined by a defendant. Tex.
Civ. Prac. & Rem. Code § 33.003.[9] The
statute required the trier of fact to apportion responsibility 

with respect to each
person’s causing or contributing to cause in any way the harm for which
recovery of damages is sought, whether by negligent act or omission, by any
defective or unreasonably dangerous product, by other conduct or activity that
violates an applicable legal standard, or by any combination of these . . . . 

 

Id. §
33.003(a). 

Chapter
33 applied to a broad range of cases, including “any cause of action based on
tort in which a defendant, settling person, or responsible third party is found
responsible for a percentage of the harm for which relief is sought” and
actions brought under the Texas Deceptive Trade Practices-Consumer Protection
Act. Id. §§ 33.002(a),[10] (h).[11]
Section 33.002(c) expressly excluded from its coverage actions to collect
workers’ compensation benefits, actions against an employer for exemplary
damages arising out of the death of an employee, and claims for exemplary
damages included in an action to which this chapter otherwise applies.[12] Section 33.002(b) excluded
application of Chapter 33 to actions for damages caused by a list of
intentional criminal acts committed in concert with another person by imposing
joint and several liability.[13] Chapter 33 does not specifically
exclude the Dram Shop Act. 

C.
Smith v. Sewell

This
Court addressed the applicability of Chapter 33 to the Dram Shop Act in Smith
v. Sewell, 858 S.W.2d 350 (Tex. 1993). When Sewell was decided,
Chapter 33 provided that it applied “[i]n an action to recover damages for
negligence . . . or an action for products liability grounded in negligence.” Tex. Civ. Prac. & Rem. Code §
33.001(a).[14] The Court held that the essential
elements of a dram-shop action replicated those of a negligence claim, hence
Chapter 33 applied to the Act. Sewell, 858 S.W.2d at 355-56. 

In
Sewell, the plaintiff became intoxicated at a bar. Id. at 351. On
his way home, he lost control of his car and was severely injured in a one-car
accident. He sued the bar. This Court explicitly recognized that a cause of
action against a provider of alcohol is a direct action for the wrongful
conduct of the provider: “[L]iability under [the Dram Shop Act] is premised on
the conduct of the provider of the alcoholic beverages—not the conduct of the
recipient or a third party.” Id. at 355. The Court reasoned this is true
“regardless of whether the intoxicated individual injures himself or a third
party.” Id. The Court then examined the comparative responsibility
scheme and its exclusions and concluded that a cause of action against a
provider of alcohol was not excluded from the Comparative Responsibility Act,
and therefore, the comparative responsibility scheme applied. Id. at
356. The Court identified the Legislature’s intent, expressed under Chapter 33,
as “requir[ing] the trier of fact to determine the percentage of responsibility
attributable to each of the parties involved in causing the injury.” Id.
(emphasis added). Under the combined effect of both statutes, an
intoxicated person “will be entitled to recover damages only if his percentage
of responsibility is found to be less than or equal to 50 percent,” and any
recovery must be reduced by the percentage of the intoxicated individual’s
responsibility. Id. The Court recognized that this interpretation of the
statutes ensured a consistent and equitable approach to dram-shop liability,
whether or not the case involved first or third person liability. Id.

In
this case, the court of appeals held that Sewell did not apply to
third-party Dram Shop claims like this one. 69 S.W.3d at 805. The court
interpreted Sewell as limiting an intoxicated patron’s recovery against
a provider according to the intoxicated person’s percentage of responsibility
but not imposing similar limitations when a third party seeks recovery against
a provider for damages caused by an intoxicated patron’s actions. Id. Instead,
the court of appeals concluded that a provider is vicariously liable for the
damages caused by an intoxicated employee or patron in third party actions in
which there are no allegations of negligence of the third party. Id. The
court reasoned that this interpretation is consistent with the Dram Shop Act
because the Act imposes liability on the provider for the actions of the
intoxicated person, “just as an employer is liable for the damages caused by an
employee in the course and scope of the employment.” Id. at 806
(citations omitted). Thus, the court concluded, “a division of liability would
be meaningless: the vicariously liable party is liable for the other party’s
actions, as though those actions were its own.” Id.

This
is contrary to our opinion in Sewell, and rebutted by the deterrent
effects of the Act, discussed above. This Court has interpreted the Dram Shop
Act to create liability based “on the conduct of the provider of the alcoholic beverages—not
the conduct of the recipient or a third party.” Sewell, 858 S.W.2d at
355. The conduct for which the provider may be held liable is the same conduct
“whether the intoxicated individual injures himself or a third party.” Id. Thus,
the premise of the court of appeals’ vicarious liability holding—that the
provider’s liability stems from the conduct of the intoxicated individual
instead of the provider’s own conduct—runs contrary to both the Dram Shop Act
and our interpretation of the Act in Sewell. Compare Sewell, 858
S.W.2d at 355, with 69 S.W.3d at 806. 

The
dissents likewise recognize significant problems with their approaches in light
of this precedent. They approach the problem of Sewell differently. Chief Justice Jefferson argues that Sewell
was wrongly decided but nevertheless would keep the holding intact as to
first–party claims and create a different rule for third–party claims. __
S.W.3d __. Similarly, Justice O’Neill
would limit Sewell’s holding to first–party claims thereby distinguishing
it from the instant case. __ S.W.3d __. Nothing in the statute supports a
different rule in this regard for first– versus third–party claims. In fact,
the statute anticipates the existence of both types of claims by describing the
“person bringing the suit” broadly and referring to the danger created by the
intoxicated person as impacting “himself and others.” Tex. Alco. Bev. Code § 2.02.[15]
Contrary to Chief Justice Jefferson’s
dissent, nothing in the Dram Shop Act prevents a provider from “lessen[ing] or
escap[ing] liability altogether” if a jury determined that the intoxicated
patron was completely responsible for the damages and injuries suffered by a
third–party. See __ S.W.3d __. Refusing to apply Sewell’s rule of
law to cases in which a third party is injured as a result of an intoxicated
person’s actions is contrary to the language of the Dram Shop Act, to the
premise of Sewell, and to the purpose of the Dram Shop Act: the
provider’s liability stems from its own conduct.

D. Legislative Intent

Our
review is confined to identifying the expressed legislative intent and applying
it. Even if this Court were to agree with the court of appeals that holding a
provider vicariously liable for a patron’s intoxication may be a legitimate
public policy, we would still be constrained to faithfully apply the
Legislature’s statutory proportionate responsibility scheme. Imposing vicarious
liability in dram-shop cases conflicts with the Proportionate Responsibility
Act. The court of appeals suggested that the Legislature did not intend for an
innocent third party to bear the risk of an intoxicated patron’s insolvency.
But, by enacting Chapter 33, the Legislature made the policy decision that an
innocent third party, suing the intoxicated patron and the dram shop, could be
burdened with the risk of a joint tortfeasor’s insolvency. A tortfeasor who was
found less than fifty-one percent responsible does not have to pay the entire
amount of damages, only his or her proportionate share. Tex. Civ. Prac. & Rem. Code §§ 33.013(a), (b)(1).[16]

We
recognize that there may be a greater incentive to avoid conduct that leads to
responsibility for higher damages than to avoid conduct that leads to
responsibility for lower damages. Thus, a statute that makes providers liable
for all the damages caused by an intoxicated patron could be a greater
deterrent to serving that patron. That may influence the drafting of a statute,
but it says little about how to interpret the words of the Dram Shop and
Proportionate Responsibility Acts. The statutes only hold providers responsible
for their own conduct causing injury. On the other side of the coin, it is a
fundamental tenet of tort law that an entity’s liability arises from its own
injury-causing conduct. Under the dissenters’ positions, the provider would be
responsible for all the damages caused by an inebriated patron even if he never
drank any of the product purchased from the provider. The same would occur if
an inebriated patron drank a bit of the dram shop’s alcohol but evidence
established that it did not contribute any further to the deterioration of the
patron’s ability to drive safely. We recognize some of the alternatives the
Legislature considered as it drafted the statutes; however, we do not pick and
choose among policy options on which the Legislature has spoken. Our role is
“not to second-guess the policy choices that inform our statutes or to weigh
the effectiveness of their results; rather, our task is to interpret those
statutes in a manner that effectuates the Legislature’s intent.” McIntyre v.
Ramirez, 109 S.W.3d 741, 748 (Tex. 2003). Upon a finding of liability, the
statutes make dram shops responsible for the proportionate share of the
injuries their conduct caused.

The
broad coverage of the proportionate responsibility statute to tort claims is
persuasive. The Chapter 33 proportionate responsibility scheme includes
exceptions for certain torts, but claims against providers of alcohol are not
among those exceptions. See, e.g., Tex.
Civ. Prac. & Rem. Code §§ 33.002(b),[17] (c).[18] For example, the Legislature carved
out exceptions for a host of criminal acts, declaring that there should be
joint and several liability instead of proportionate responsibility, but only
if there was specific intent to do harm to others and the defendant acted in
concert with another. Id. § 33.002.[19] The
list of crimes is numerous and broad in scope, ranging from capital murder to
fraudulent destruction of a writing, and also includes theft when “the
punishment level . . . is a felony of the third degree or higher.” Tex. Civ. Prac. & Rem. Code
§ 33.002(b)(13).[20] Section 33.002(c) expressly excluded
from its coverage actions to collect workers’ compensation benefits, actions
against an employer for exemplary damages arising out of the death of an
employee, and claims for exemplary damages included in an action to which this
chapter otherwise applies.[21] When the Legislature has chosen to
impose joint and several liability rather than proportionate liability, it has
clearly said so.

The
Legislature created a strict liability cause of action against a person who
manufactures methamphetamine for injuries, damages, or death arising from the
manufacture or exposure to the manufacturing process of that drug. Tex. Civ. Prac. & Rem. Code
§§ 99.002–.003. The Legislature declared that a person who manufactures
methamphetamine and is found liable for any amount of damages arising from the
manufacture is jointly liable with any other defendant for the entire amount of
damages arising from the manufacture. Id. § 99.004. In both the
statute that created the cause of action against such manufacturers and in
amendments to the Proportionate Responsibility Act, the Legislature
specifically said that the proportionate responsibility scheme “does not apply
in an action for damages arising from the manufacture of methamphetamine.” Id.
§ 99.005; see also id. § 33.002(c)(3). The Legislature did not
carve out an exclusion for alcohol providers in either the Proportionate
Responsibility Act or the Dram Shop Act.

Both
dissents struggle to conclude that an injured third party may recover his
damages entirely from the alcohol provider under the Dram Shop Act. Chief Justice Jefferson argues that the
Act creates “a form of vicarious liability,” while Justice O’Neill allows a jury to apportion liability but
ultimately holds the provider liable for the full amount of damages, regardless
of the jury’s determination. The stated public policy behind the Alcoholic
Beverage Code, including the Dram Shop Act, is “the protection of the welfare,
health, peace, temperance, and safety of the people of the state.” Tex. Alco. Bev. Code § 1.03. More
specifically, the Dram Shop Act codifies the exclusive action against an
alcohol provider for injuries or damages resulting from the intoxication of a
patron. Id. § 2.02. The legislative intent to protect the public and
provide a potential remedy against an alcohol provider does not equate to a
guarantee of recovery against a provider by an injured party. The Act simply
supplants in a single codified action all prior common law theories that
previously could have been employed by the injured party (either a third party
or the intoxicated patron himself) against a provider. See id. § 2.03.
While the dissents’ positions might express sound public policy, we are
constrained to conclude that neither correctly applies the Legislature’s
statutory proportionate responsibility scheme. Both read more into the Dram
Shop Act than the words chosen by the Legislature can bear.

At
the time of the Duenezes’ injuries, the proportionate responsibility scheme
imposed joint and several liability on those who caused toxic tort injuries and
those who released hazardous substances into the environment if their
responsibility was equal to or greater than fifty percent. Tex. Civ. Prac. & Rem. Code § 33.013(c).[22] In such cases, liability was not
limited by proportionate responsibility. In 2003, the Legislature revisited
that exclusion and repealed it in its entirety.[23] Now,
defendants found liable for these tortious acts are subject to the general
proportionate responsibility scheme. The Legislature seemed intent on creating
a general scheme of proportionate responsibility, subject to specific statutory
exclusions.

Finally,
our controlling interpretation of that statutory scheme has remained in place
since our 1993 decision in Smith v. Sewell. 858 S.W.2d at 356 (holding
that “[a]pplication of the principles of comparative responsibility to causes
of action brought under [the Dram Shop Act] establishes a consistent and
equitable approach to the issue of ‘dramshop liability’ generally, and first
party ‘dramshop liability’ specifically”). In the thirteen years since Sewell
was decided, the Legislature has amended the Dram Shop Act and has extensively
amended the proportionate responsibility statutes, but it has never excluded a
cause of action against a provider of alcohol from comparative or proportionate
responsibility. We presume that the Legislature knew of our holding in Sewell
and that by subsequently re-enacting the Proportionate Responsibility Act and
the Dram Shop Act, it accepted this Court’s construction of those statutes.
“‘The Legislature must be regarded as intending statutes, when repeatedly reenacted,
as in the case here, to be given that interpretation which has been settled by
the courts.’” Wich v. Fleming, 652 S.W.2d 353, 355 (Tex. 1983) (quoting Marmon
v. Mustang Aviation, Inc., 430 S.W.2d 182, 187 (Tex. 1968)); Coastal
Indus. Water Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co.,
563 S.W.2d 916, 918 (Tex. 1978). 

Given
the many instances in which the Legislature has (1) expressly said that
certain causes of action are excluded from the Proportionate Responsibility
Act, which would otherwise limit liability commensurate with proportionate
responsibility, and (2) has expressly tailored special joint and several
liability provisions for some causes of action, the phrase in Section 2.03
cannot reasonably be read to require vicarious liability and joint and several
liability in lieu of proportionate liability for alcohol providers.

The
dissenters suggest that the Court’s opinion exonerates dram shops from
liability. They draw a stark distinction between excusing a dram shop from liability
for its conduct that violates the Act, which they assert to be the Court’s
opinion, and making the provider liable for all the injuries caused by an
inebriated patron, which is the dissenters’ position. For several reasons, our
interpretation does not excuse dram shops from liability for their conduct.
First, it is simply inaccurate to describe the Court’s holding as allowing the
dram shops to escape liability. The central issue in this case is the
apportionment of damages among liable parties. Second, we follow the
Legislature’s guidance in the language of the statute, as explained above.
Third, it is not true that juries will always assign most of the responsibility
for injury, as between a provider and an inebriated patron, to the patron. Juries
have found the dram shop equally or more responsible than the patron for
injuries to third parties. See, e.g., I-Gotcha, Inc. v. McInnis,
903 S.W.2d 829, 837 (Tex. App.— Fort Worth 1995, writ denied) (jury found that
the dram shop proximately caused fifty-one percent of the injuries); Venetoulias
v. O’Brien, 909 S.W.2d 236, 239 (Tex. App.—Houston [14th Dist.] 1995, writ
dism’d by agr.) (trial court found that the patron proximately caused
thirty-three percent of the injuries and the dram shop thirty-three percent).
Unlike Chief Justice Jefferson’s
position, which would take the question of apportioning responsibility away
from the jury, we leave this determination to the fact-finder imbued with
“constitutional authority to weigh conflicting evidence.” See Volkswagen of
Am., Inc. v. Ramirez, 159 S.W.2d 897, 913–14 (Tex. 2004) (Jefferson, C.J.,
dissenting).

III.
Severance

The
trial court severed F.F.P.’s cross-claim against Ruiz and then tried the case
with F.F.P. as the only defendant. The court of appeals affirmed the trial
court’s severance order, concluding that because F.F.P. was vicariously liable
for Ruiz’s conduct, F.F.P.’s right of recovery, if any, was through an
indemnification action only. 69 S.W.3d at 807. The court of appeals held that
any indemnity claim F.F.P. might have against Ruiz would not accrue until
F.F.P.’s liability to the Duenezes’ was “fixed and certain.” Id. at
807-08. By this reasoning, F.F.P.’s claim for indemnification against Ruiz
would not become actionable until an adverse judgment was taken. Id. The court rejected F.F.P.’s request to include Ruiz as a responsible third party
under Chapter 33, reasoning that F.F.P.’s vicarious liability puts F.F.P. in
the same position as Ruiz would have been. Id. at 808. Because Ruiz’s
actions are imputed to F.F.P., the court continued, Ruiz is not a responsible
third party who may be included in a proportionate responsibility question. Id. 

Rule
41 of the Texas Rules of Civil Procedure provides that “[a]ny claim against a
party may be severed and proceeded with separately.” We will not reverse a
trial court’s order severing a claim unless the trial court abused its
discretion. Guar. Fed. Sav. Bank v. Horseshoe Op. Co., 793 S.W.2d 652,
658 (Tex. 1990). 

A claim is
properly severable if (1) the controversy involves more than one cause of
action, (2) the severed claim is one that would be the proper subject of a
lawsuit if independently asserted, and (3) the severed claim is not so
interwoven with the remaining action that they involve the same facts and
issues.

 

Id. We have explained that avoiding prejudice, doing justice, and increasing
convenience are the controlling reasons to allow a severance. See id. 

As
already explained, the Dram Shop Act does not make a provider vicariously
liable for the conduct of an intoxicated patron. F.F.P.’s liability arises from
the actions of its employees and agents—not through the actions of Ruiz. See
Sewell, 858 S.W.2d at 355. Thus, F.F.P.’s claim against Ruiz is not one for
indemnification that could be properly severed; it is one of contribution for
Ruiz’a proportionate share of the damages for which he is responsible. F.F.P.’s
claim against Ruiz is “interwoven with the remaining action”: it involves the
same facts and issues to be litigated in the Duenezes’ action against F.F.P. In
fact, to succeed in a claim against F.F.P., the Duenezes had to prove that Ruiz
was clearly intoxicated and that his conduct proximately caused damages—the
same facts and issues that would be litigated in a separate suit by F.F.P. against
Ruiz. The trial court abused its discretion in severing F.F.P.’s claim against
Ruiz.

Chapter
33 requires “[t]he trier of fact, as to each cause of action asserted, [to]
determine the percentage of responsibility . . . for [each claimant, defendant,
settling person, and responsible third party who has been joined under Section
33.004] with respect to each person’s causing or contributing cause in any way
the harm for which recovery of damages is sought . . . .” Tex. Civ. Prac. & Rem. Code §
33.003. This statutory mandate is not discretionary; failing to correctly apply
the law is an abuse of discretion. In re Kuntz, 124 S.W.3d 179, 181 (Tex. 2003). Therefore, F.F.P. was entitled to a charge that included a question to allow
the trier of fact in a single trial to determine Ruiz’s proportionate share of
responsibility. The trial court’s severance constituted reversible error.

IV.
Conclusion

The
trial court abused its discretion by severing F.F.P.’s claim against Ruiz,
proceeding to trial with F.F.P. as the only defendant, and refusing to submit
jury questions for determination of Ruiz’s negligence and proportion of
responsibility. We reverse the court of appeals judgment and remand the case to
the trial court for a new trial.

 

________________________________________

J. Dale
Wainwright

Justice

 

 

OPINION DELIVERED:
November 3, 2006


















[1] The Legislature has amended much of the code applicable to this case. For
clarity, the text references the codified version of the statutes applicable to
the case as current law with the full citation appearing in footnotes.
Citations without clarifying footnotes refer to the version in effect on the
date of this opinion.

Act of June 1, 1987, 70th Leg., R.S., ch.
303, § 3, 1987 Tex. Gen. Laws 1673, 1674, amended by Act of June 17,
2005, 79th Leg., R.S., ch. 643, § 1, 2005 Tex. Gen. Laws 1617, 1617 (current
version at Tex. Alco. Bev. Code §
2.02).





[2] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3,
1987 Tex. Gen. Laws 1673, 1674, amended by Act of June 20, 2003, 78th
Leg., R.S., ch. 456, § 1, 2003 Tex. Gen. Laws 1698, 1698-99 (current version at
Tex. Alco. Bev. Code § 2.03(a)).





[3] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3,
1987 Tex. Gen. Laws 1673, 1674 (amended 2003).





[4] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3,
1987 Tex. Gen. Laws 1673, 1674 (amended 2005).





[5] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3,
1987 Tex. Gen. Laws 1673, 1674 (amended 2005).





[6] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3,
1987 Tex. Gen. Laws 1673, 1674 (amended 2003).





[7] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3,
1987 Tex. Gen. Laws 1673, 1674 (amended 2003).





[8] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1,
1985 Tex. Gen. Laws 3242, 3271, amended by Act of June 3, 1987, 70th
Leg., 1st C.S., ch. 2, § 2.09, 1987 Tex. Gen. Laws 37, 42, amended by Act
of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971,
974, amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204,
§§ 4.07, 4.10(5), 2003 Tex. Gen. Laws 847, 858-59 (current version at Tex. Civ. Prac. & Rem. Code § 33.013).





[9] Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, §
2.06, 1987 Tex. Gen. Laws 37,41, amended by Act of May 8, 1995, 74th
Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 972, amended by Act
of June 2, 2003, 78th Leg., R.S., ch. 204, § 4.02, 2003 Tex. Gen. Laws 847, 855
(current version at Tex. Civ. Prac.
& Rem. Code § 33.003).





[10] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41, amended by Act of May 29, 1989, 71st
Leg., R.S, ch. 380, § 4, 1989 Tex. Gen. Laws 1490,1492, amended by Act
of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws
971,971-72, amended by Act of May 21, 2001, 77th Leg., R.S., ch. 643, §
2, 2001 Tex. Gen. Laws 1208, 1208-09, amended by Act of June 2, 2003,
78th Leg., R.S., ch. 204, § 4, 2003 Tex. Gen. Laws 847, 858-59 (current version
at Tex. Civ. Prac. & Rem. Code § 33.002).





[11] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, repealed 2003).





[12] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, 2003).





[13] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, repealed 2003).





[14] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen.
Laws 3242, 3271, amended by Act of June 3, 1987, 70th Leg. 1st C.S., ch.
2, § 2.04, 1987 Tex. Gen. Laws 37, 40, amended by Act of May 8, 1995,
74th Leg., R.S., ch. 136, § 1, 1995 Tex. Gen. Laws 971, 971 (current version at
Tex. Civ. Prac. & Rem. Code § 33.002).
Section 33.001 grounded the applicability of the statute in negligence.
However, Section 33.002, added to the code in 1987, is specifically devoted to
the applicability of the chapter and is rooted in torts, giving the current law
a broader application than that at the time of Sewell.

 





[15] Act of June 1, 1987, 70th Leg., R.S., ch. 303, § 3,
1987 Tex. Gen. Laws 1673, 1674 (amended 2005).





[16] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1,
1985 Tex. Gen. Laws 3242, 3271 (amended 1987, 1995, 2003).





[17] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, repealed 2003).





[18] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, 2003).





[19] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, 2003).





[20] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, repealed 2003).





[21] Act of June 3, 1987, 70th Leg., 1st C. S., ch. 2, §
2.05, 1987 Tex. Gen. Laws 37,41 (amended 1989, 1995, 2001, 2003).





[22] Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1,
1985 Tex. Gen. Laws 3242, 3271 (amended 1987, 1995, 2003).





[23] Act of June 2, 2003, 78th Leg., R.S., ch. 204,
§ 4.10(5), 2003 Tex. Gen. Laws 847, 859.